An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-369

Filed 19 November 2025

Cabarrus County, Nos. 23CR477854-120, 24CR000165-120

STATE OF NORTH CAROLINA

v.

ADRIAN JERROD CALDWELL, Defendant.

Appeal by defendant from judgment entered 18 September 2024 by Judge Michael D. Duncan in Cabarrus County Superior Court. Heard in the Court of Appeals 15 October 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Anne P. Martin, for the State-appellee.*
>
> *Joseph M. Jennings for defendant-appellant.*

GORE, Judge.

Defendant Adrian Jerrod Caldwell appeals the judgment convicting him of common law robbery, fleeing and eluding arrest, and attaining habitual felon status pursuant to N.C.G.S. §§ 7A-27(b) and 15A-1444(a). Defendant was sentenced to 146 to 188 months' imprisonment. Upon reviewing the briefs and the record, we discern no error.

**I.**

Defendant was charged with robbery with a dangerous weapon and felony fleeing to elude arrest after stealing a truck and attempting to avoid arrest by refusing to stop when the police initiated their lights and siren and by fleeing on foot once the stolen vehicle collided into a power box. Defendant waived his Miranda rights and gave verbal statements, some reduced to writing, that were testified to by law enforcement at trial. Defendant was also charged and indicted with attaining habitual felon status.

The jury returned guilty verdicts for common law robbery and fleeing to elude arrest. Defense counsel stated defendant intended to admit his status as a habitual felon. The court recessed to allow defense counsel time to go over the plea transcript with defendant.

After recess, defense counsel addressed the court (outside of the jury's presence) to communicate defendant had become "recalcitrant, hostile, unmanageable, inconsolable, and refuse[d] to answer in the affirmative, [d]o you believe your mind is clear and do you understand what you are doing in this hearing." Defense counsel communicated defendant was "like a light switch" and that when he asked why he did not understand, defendant stated, "because I'm still grieving." Defense counsel also made statements suggesting he had resistance with defendant when he began representing him and stated the way he managed this was to "let him stew in it" and to not "cater to his behavior."

The trial court asked defense counsel if he had any concerns and stated after interacting with him it did not have concerns as to defendant's capacity to proceed because of the way defendant spoke with the court and responded appropriately throughout the week of trial. Defense counsel quickly affirmed he also had no concerns and added that defendant was "extremely intelligent." The court suggested having a habitual felon hearing, but defense counsel stated defendant had already agreed to stipulate to the status of habitual felon.

There was some discussion between counsel and the court about timing for the hearing, but after a pause in the proceedings (and the record) the trial court began the habitual felon plea colloquy with defendant. Defendant responded in the affirmative throughout the colloquy including to the question, "Do you believe that your mind is clear here today and fully understand what you're doing in this hearing?" Defendant also affirmed his attorney explained the charges, elements, and defenses to the habitual felon indictment. Defendant affirmed he was satisfied with defense counsel's services, that he was not threatened to plead guilty and that he entered the plea of his own will with full understanding of this decision. Defendant filled out and signed the transcript plea.

During sentencing, defendant could offer mitigating factors and took the opportunity to apologize to the victims for his actions, to take full responsibility, and to accept the consequences. Defendant also stated he had been seeking therapy because of grief from losing his daughter, and that he was "at a point in life right now,

[he was] just ready to get it all over with." Defendant was sentenced to 146 to 188 months' imprisonment and the court recommended substance abuse treatment and psychiatric and/or psychological counseling.

## II.

Defendant seeks review of the following three issues: (1) whether the trial court erred by failing to sua sponte conduct a competency hearing; (2) whether the trial court erred by failing to inquire into any conflict between defendant and his counsel that would adversely affect his representation; and (3) whether defense counsel committed ineffective assistance of counsel by failing to seek a competency hearing.

## A.

Defendant first argues the trial court erred by failing to conduct a sua sponte competency hearing. We disagree.

Defendant's constitutional due process rights pursuant to the Fourteenth Amendment of the United States Constitution include the right to be "competent to stand trial." *State v. Jones*, 296 N.C. App. 512, 516 (2024) (citing *Drope v. Missouri*, 420 U.S. 162, 171–72 (1975)). Regardless of whether the parties raise questions of incompetence, the trial court must hold a competency hearing sua sponte when there is "substantial evidence of the defendant's incompetency." *State v. Wilkins*, 386 N.C. 923, 930 (2024); *State v. Sides*, 376 N.C. 449, 458 (2020). This constitutional right cannot be waived. *Wilkins*, 386 N.C. at 930.

The question, then, is what qualifies as "substantial evidence" to elicit a sua sponte competence hearing? The court should look to "a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." *State v. Hollars*, 376 N.C. 432, 442 (2020). This requires consideration of the totality of the evidence in the record and is "a fact-intensive inquiry that will hinge on the unique circumstances presented in each case." *Sides*, 376 N.C. at 466. "The relevant period of time for judging a defendant's competence to stand trial is at the time of trial." *Hollars*, 376 N.C. at 442 (cleaned up).

In the present case, defendant argues there was substantial evidence to question his competency because he suffered from suicidal ideations, serious depression, and had a history of irrational behavior. While defendant points to statements made to police at the time of arrest, we limit our review to the relevant period pursuant to case law, at the time of trial, along with any relevant medical opinion. *Id.* at 442. Defendant also states the following record evidence as substantial: telling the court he was struggling with grief over the loss of his daughter; stating to the court, "I'm just at a point in life right now, I'm just ready to get it all over with"; and defense counsel telling the court that after the jury's verdict defendant became "recalcitrant, hostile, unmanageable, inconsolable." He also emphasizes when defense counsel told the court,

> My client . . . refuses to answer in the affirmative, Do you
> believe your mind is clear and do you understand what you
> are doing in this hearing, question number 4D, which is

> rather essential in the proceeding. . . . it's like a light switch. . . . . I said, why are you, you know, not understanding what you're doing and your mind is not clear? Because I'm still grieving.

Although defendant argues this evidence is substantial to demonstrate an unstable mental state and is comparable to *Drope* and *Sides*, we determine this evidence falls far below the threshold established by precedent to require a sua sponte competency hearing. Apart from this limited record evidence that occurred after the jury's verdict, defendant points to no medical opinion of mental instability, no signs throughout the trial of irrational behavior, and no suggestions by the court or defense counsel that competency was at issue. Defendant's case falls short when compared to the facts of *Drope*, in which the defendant had multiple pre-trial psychiatric reports discussing irrational acts, borderline mental deficiency and chronic anxiety reaction with depression, had attempted to choke his wife to death the weekend before trial, and shot himself during the week of trial. 420 U.S. at 175–80.

Additionally, defendant's case does not compare to *Sides*. In *Sides*, the defendant attempted suicide during the recess of her trial and was involuntarily committed. 376 N.C. at 464. The trial court received two psychiatric opinions discussing how the defendant was mentally ill and dangerous to herself or others and received additional medical records that indicated a history of mood disorder. *Id.* In both *Drope* and *Sides*, the Courts indicated that suicidal attempts alone did not automate a required competency hearing, but the suicidal attempt along with

additional evidence tipped the scales to require a competency hearing. *Drope*, 420 U.S. at 181 n.16; *Sides*, 376 N.C. at 464, 466. Considering the totality of the evidence in the present case, there was no substantial evidence to trigger a sua sponte competency hearing. Therefore, the trial court did not err.

**B.**

Next, defendant argues the trial court erred because it did not adequately inquire into a possible conflict of interest between defendant and his defense counsel. Defendant argues the court was put on notice when defense counsel made certain statements after the jury's verdict. We disagree.

"The right to effective assistance of counsel includes the right to representation that is free from conflicts of interest." *State v. Choudhry*, 365 N.C. 215, 219 (2011) (cleaned up). "A conflict of interest arises where the representation of one client will be directly adverse to another client . . . or by a personal interest of the lawyer." *State v. Williams*, 285 N.C. App. 215, 232 (2022). When the conflict-of-interest centers around counsel's multiple representations, past or current, our Courts employ the *Sullivan* standard rather than the *Strickland* standard. *State v. Phillips*, 365 N.C. 103, 120–21 (2011).

But, in a case like the present, in which the apparent conflict of interest does not relate to multiple representations, the *Strickland* standard may still apply. *See id.* at 121. In *Phillips*, the Court applied the *Strickland* standard because the "defendant [did] not contend counsel . . . engaged in concurrent or successive

representation of other parties and him." *Id.* Instead, his complaint was that his attorney had a conflict because defendant wanted the attorney to withdraw as counsel in order to testify on behalf of him. *Id.* The Court explained that as stated in *Holloway*, "defense counsel is in the best position to determine whether a conflict exists." *Id.* It further explained that because the facts surrounding the apparent conflict "[did] not make it impractical to determine whether defendant suffered prejudice, . . . *Strickland's* framework [was] adequate to analyze [the] defendant's issue." *Id.* at 122.

In the present case, defendant argues that statements made by defense counsel to the trial court demonstrated a conflict of interest because "defense counsel allowed his own exasperation to supersede [defendant's] interests" and that "he berated [defendant] in open court, calling him recalcitrant, hostile, unmanageable, inconsolable." Similar to *Phillips*, the facts of this case allow us to consider whether defendant suffered prejudice, and therefore, the *Strickland* framework, rather than the *Sullivan* framework, is proper to address this alleged conflict. *Id.*

Under the *Strickland* framework, "when a defendant raises a claim of ineffective assistance of counsel, . . . he or she must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense." *Choudry*, 365 N.C. at 219 (cleaned up). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," then we do not need to also

consider the attorney's performance. *Strickland v. Washington*, 466 U.S. 668, 697 (1984).

In the present case, we do not discern sufficient prejudice based upon the limited statements of defense counsel. Defense counsel made the following statements to the trial court, outside of the presence of the jury:

> Without going into too much detail, my client has become recalcitrant, hostile, unmanageable, inconsolable, and refuses to answer in the affirmative, Do you believe your mind is clear and do you understand what you are doing in this hearing, question number 4d, which is rather essential in the proceeding. So I'm not sure what I recommend, but it's like a light switch. We're back to day one, my first encounter with him at the jail wherein many things were said, which I won't go into detail.
>
> He is now – his daughter at 17 died of a heart attack very recently, I think within the last three, four months. I said, why are you, you know, not understanding what you're doing and your mind is not clear? Because I'm still grieving. I'm not sure how to proceed with him, but in the past, I've found that the minute I let him stew in it and not cater to his behavior, the better off I am. That's the only way I've been able to manage this case to the point of trial is by not catering to his taunting – and he's now back to day one. Within 120 seconds of my arrival at that jail, he told me to get myself taken off his case. I had no reason to do so, so I proceeded. It then progressed from there. Well, I'm back to that now, so I'm not sure how – I know how I handled it the first time that worked quite well.
>
> . . .
>
> THE COURT: I guess the way that I want to approach it is, do you have any concerns – he's been here all week. I've spoke to him. He's responded appropriately. I don't have any concerns as to his capacity to proceed.

MR. COOK: Oh, I never have.

THE COURT: What, sir?

MR. COOK: I never have. He's extremely intelligent.

THE COURT: So – and I still don't have any concern. I'm just asking you, at this point –

MR. COOK: No.

THE COURT: You do not. So I would say that we proceed on.

Soon after, the trial court conducted the plea colloquy with defendant, who once again responded appropriately and in the affirmative. Most of defendant's arguments require us to infer into what was not said and what "could" have happened at least "indirectly." Defendant asks us to give little weight to what was communicated, such as he affirmed satisfaction with defense counsel's services, and affirmed he spoke with defense counsel about the nature of the charges, the elements of the charges, and the possible defenses available.

Further, defendant was given multiple opportunities to communicate any concern or coercion when the trial court addressed him. Defendant affirmed his understanding of the matters, that he was not promised or threatened in any way to pressure him to enter into the plea, and that he entered into the plea on his own free will and with full understanding of what he was doing. The trial court also gave defendant opportunity to voice any concerns or ask any questions, but defendant declined to do so. Finally, during sentencing, defendant was given an opportunity to

address the court and took the opportunity to apologize for his actions, and to specifically apologize to the victims. He asked for mercy in his sentencing but also communicated he would accept the punishment imposed for his "wrongdoing." He communicated he had been in therapy to process his grief over the loss of his daughter, and that he was "at a point in [his] life right now, [he's] just ready to get it all over with." Considering what is in the record, we discern no prejudice. Because we discern no prejudice, we do not consider whether defense counsel's performance was deficient. Defendant's argument is without merit.

### C.

Lastly, defendant argues ineffective assistance of counsel because defense counsel did not request a competency hearing. Defense counsel told the court he found defendant to be very intelligent and did not have any concerns about his competency. Because we already determined there was not substantial evidence to require a sua sponte competency hearing, we now conclude defense counsel's representation was not deficient. *See State v. Beckham*, 145 N.C. App. 119, 126 (2001) (determining that any evidence at trial of defendant's incompetency was insufficient because defense counsel testified to the court that the defendant was intelligent, understood the charges, and assisted him in the defense). Defendant's argument is without merit.

### III.

For the foregoing reasons, the trial court did not err.

NO ERROR.

Judges COLLINS and STADING concur.

Report per Rule 30(e).